## THE AMERICAN NATIONAL BANK v. JOSEPH BUSHEY.

*Suit for deposits—Evidence—Res inter alios—Judicial notice of usages in banking business—Authority to sign checks—Burden of impeaching an account stated.*

A bank was sued by a depositor for moneys paid out on checks signed in his name by other persons: *Held,* that plaintiff's testimony that when sick he signed checks himself, and that he never authorized his daughter and others who attended to writing his letters, to do so, had no tendency to show that he never gave such authority to the signer of the checks, and was inadmissible for that purpose.

In an action by a depositor against a bank for moneys paid out on checks signed in his name by another person direct evidence of the incidents of another suit brought by the plaintiff against that person but to

which the bank had not been a party, was inadmissible to affect this litigation.

Judicial notice must be taken of the ordinary rules and necessities of banking business.

Banks have a right to expect their depositors to know and conform to the ordinary usages of business, and they may rely to a reasonable extent on the presumption that their customers deal with them. accordingly.

A depositor, long after he had supposed he had withdrawn all his deposits, sued the bank for a balance which the bank claimed he had drawn, and part of which had been paid out on checks signed by another person in his name. But it appeared that the depositor had been in the habit of checking out the whole of a deposit shortly after making it, and had neglected to present his bank book for balancing, or to withdraw his checks. *Held*, that it was misleading to treat this as bearing only on the probabilities as to whether the third person who had signed the checks would have risked detection by acting without authority, and not upon the probabilities as to whether the depositor in checking out had overlooked comparatively large sums and failed to find it out, or whether he had authorized another to sign.

A depositor who had been in the habit of checking out all his money shortly after he deposited it, was notified of a balance long after he supposed he had exhausted his account, and immediately withdrew it. He made no inquiry or objection but sued the bank, nearly two years afterwards, for an alleged balance including sums which had been paid out on checks signed by another in his name. The trial court charged that the bank had the burden of showing that these checks had been signed by authority. *Held*, that the depositor's course in withdrawing the balance on notification of it, was a strong case of acquiescing in an account stated, which required him to bring himself within some rule that would allow him to impeach it, and that he had the burden of impeaching it.

Error to Superior Court of Detroit. Submitted November 9, 1880. Decided January 5, 1881.

Assumpsit. Defendant brings error. Reversed.

*E. Y. Swift* and *F. A. Baker* for plaintiff in error.

*Don. M. Dickinson* and *Griffin & Dickinson* for defendant in error.

CAMPBELL, J.   Bushey sued the American National Bank of Detroit to recover a balance of deposits which he claimed was never checked out.   It appears without dispute that he began to deposit with this bank in June, 1868, but no bank-book is produced running back of April, 1870, and no checks were produced by him prior to that month.   The bank book indicates from its leaves and a printed heading that it could not have contained any earlier entries.   This is manifest beyond a doubt.   The bank books show a previous closing of accounts and return of checks, which Bushey disputes. The principal importance of this testimony is that it is claimed these old checks would show that Bushey allowed one Campau to sign for him.   Beyond this these matters are of secondary importance.

The course of the accounts shows that in April, 1870, Bushey deposited $325, which was all drawn out within three weeks.   On December 30, 1870, he made his next deposit of $1000.   This was all checked out by the 20th of February, 1871.   One of the checks of $300 is now disputed as forged.   He made his next deposit in August 1871, of $290, which he drew out in four days.   He made no other deposit for about a year.   In August, 1872, he deposited $1300, and on September 25th, deposited $700.   All of this but $50 he drew out by the seventh of October.   On the 18th of October he deposited $900 and drew it out in the course of three weeks.

At this period he stopped dealing with the bank and made no further deposits or checks.

Three years thereafter, in November 1875, he was notified by the bank that he had a balance of $50 on deposit not drawn out.   He at once drew this out and had no further communication with the bank until sometime in July, 1877, when, for some reason that is not very clearly explained, but which may have arisen from a litigation then pending with one Charles F. Campau, he went to the bank and got his checks included in the entries in the bank book from April, 1870, returned, and the book written up.

Two of the returned checks were signed in his name in

the handwriting of Campau, and these Bushey asserts to have been forgeries. Of the remainder some were filled out by Campau and some by other persons, but all were signed by a signature meant to represent the name of Bushey and appended by himself. He could not write, but had learned —at some period which is disputed—to make this signature. There was some testimony tending to prove that he learned to make it about the time of his banking business; other testimony puts it earlier. There was also testimony that Campau had signed checks for him on other occasions. Bushey denied this, and the absence of the old checks became important on this inquiry.

The two checks which were disputed were one of $300, January 7, 1871, and one for $50, September 7, 1872. Each of these was at a period when the bank books show the accounts were drawn down in such a way as to balance by allowing them as genuine, and the larger check was followed by two fully-balanced transactions, succeeded by long periods when no new deposits were made; and when such were made they were speedily drawn out. The only instance during the entire dealings when anything remained on credit as not drawn out soon after depositing was the balance of $50, which Bushey drew out in November, 1875, when notified it stood to his credit.

In this interval between the last deposit and the return of the checks in July, 1877, there were changes in the bank tellers, but three were examined who had to do with the business. Their testimony tended to show the improbability of paying the two checks in question without Bushey's authority. Upon the question whether Campau had been authorized or allowed to sign there was a conflict. Bushey's testimony was the evidence on which the jury must have found in his favor. On the trial Bushey was allowed, for the purpose, as was claimed, of corroborating his denial of Campau's authority, to show that when sick he signed checks himself while in bed, and also to show that his daughter and others attended to writing his letters, but that, although she could write, he never authorized her to sign checks.

This was erroneous. It had no tendency whatever to show that he never authorized Campau to do so. A bank would not pay checks without some knowledge or supposed knowledge of their authenticity, and it could get no such knowledge if checks were signed by any one who might happen to be present, and confided in, at any particular time. A man who cannot write and who draws checks, must confide in somebody for some purposes, and it must depend on testimony to be established what persons are trusted and to what extent. Authority or the want of it as to one throws no light on dealings with others.

We do not think it was competent to introduce direct evidence concerning what took place at the trial of a suit on behalf of plaintiff below against Campau, as that controversy can have no bearing on the merits of this. There may no doubt be occasion at times to cross-examine a witness concerning his own conduct or statements on other occasions, but the existence or nature of that suit, to which the bank was not a party, could not be allowed to affect this. There was some testimony concerning the loss of a stub-book, in which Bushey was allowed to go beyond this rule. We think when he had stated that he had been unable after search to find the book, he could not be allowed on direct examination to bring into this case insinuations and statements about it that could only be understood by getting before the jury in some way the character of that contest, as affecting this. The bearing of that might have been material against him if Bushey had sued Campau for the money covered by these checks. That would show the checks legally drawn. But Bushey did not undertake to prove this, and plaintiff in error did not.

There are several points in the record which do not strike us as very important in themselves, and which may not come up again. There is, we think, a serious difficulty in the way in which the case went to the jury.

The court put the case to the jury upon the distinct grounds that there must be proof of either original authority or ratification of the execution of the checks, in order to

defeat plaintiff's right of recovery, and that the defendants below had the burden of proof to make out this authority by a preponderance of testimony. In referring to the testimony on this authority the facts concerning the deposits and their speedy withdrawal were treated as only bearing on the likelihood of Campau's risking detection; and the balancing of the account in November, 1875, was entirely disregarded. As the charge referred somewhat particularly to the various facts for and against ratification these matters became important in more than one light.

We are bound to take knowledge of the ordinary rules and necessities of business, and to deal with controversies in view of these. Banks have a right to expect their depositors to know these usages, and to conform to them. And they have a right to rely to a reasonable extent on the presumption that their customers are thus dealing with them.

We think that the fact that Bushey on so many different occasions drew checks which exhausted his apparent balances precisely, and that he did not quarterly or otherwise present his book for balancing, or withdraw his checks, was in itself very strong evidence that the account was correct, and should have been so treated. The intrinsic improbability that a small depositor could in a few days forget nearly a third of his single deposits and draw out precisely the remainder, and suppose it exhausted, cannot be separated in this instance from the subsequent failure to find it out, and the neglect to make reasonable inquiry into the state of his bank debits and credits. To leave this all out of the category of evidence of authority, and treat it merely as bearing on the likelihood that Campau would have dared to run risks of discovery, was in our opinion misleading. We are not called upon to consider to what extent, if any, such conduct would operate as an estoppel, because the subsequent dealings in November, 1875 make this unimportant.

When Bushey was notified by the bank that on his account there was a balance in his favor of $50, his attention was necessarily called to the entire account, and it became his duty to examine it. He was not told, and there was no occa-

sion on the part of the bank to tell him, how this balance arose. The bank had a right to assume that he kept accounts himself and had the means of tracing out the items, and that if he had not full *data* he would resort to the bank to get them. He made no inquiry or objection, and at once acted on the notification and drew out the admitted balance, and for nearly two years never interfered further. There could not very well be a stronger case of acquiescing in an account stated.

Without now considering whether under such circumstances of acquiescence and delay the estoppel would be absolute, there is no doubt of its effect on the burden of proof.

In every case, in a very important sense, the plaintiff always has the burden of establishing his cause of action by a preponderance of all the evidence in the cause. In a more limited sense each party has a right to rest on such presumptions as have been raised in his favor until overthrown. But there is no question as to the presumption in favor of an account stated and acted upon by both parties. If one does not choose to look over the items it can make no difference. When, as in this case, the depositor ought to know from his own accounts and vouchers the precise state of things, his concurrence merely assumes a more convincing form to the other party. The impossibility that clerks and tellers in the management of business involving such a multitude of small details could remember individual instances, is a very strong reason for requiring diligence in the single depositor to take no misleading step.

The court should have held this account stated as such evidence as called upon plaintiff to bring himself within some rule that would allow him to impeach it, and that the burden was on him to impeach it.

Judgment must be reversed with costs and a new trial granted.

The other Justices concurred.