PETER GINGRASS v. THE IRON CLIFFS COMPANY.

[See 42 Mich. 30.]

*Usage—Estoppel by settlement.*

Where business usage requires an employee to make full showing of his claims against his employer for the purposes of a complete settlement, his deliberate concealment of a claim estops him from relying upon it afterwards, and the arrangement and comparison of mutual demands must be regarded as a final statement of his claims which it would be a fraud to disturb.

Error to Marquette. Submitted April 19. Decided June 14.

ASSUMPSIT. Defendant brings error. Reversed.

*W. P. Healy* for appellant. One cannot base claims at different times on conflicting interests: *Cave v. Mills* 7 H. & N. 913; *Skyring v. Greenwood* 4 B. & C. 281; *Shaw v. Picton* id. 715; *Hoffman v. Harrington* 25 Mich. 146; Broom's Legal Maxims 131.

*M. H. Crocker* and *John D. Conely* for appellee.

CAMPBELL, J. Gingrass recovered below a round sum of $10,000 under a bill of particulars including among other things an account for stripping the surface of an iron mine and certain work as overseer; the former in the year 1873, and the latter from February, 1873, to February, 1875. His claim for the former work is based on the ground that he did more than was necessary to work the mine on his contract during the year 1873, in reliance on further similar work in the succeeding years, of which he was deprived by countermand at the close of that year. He insisted on the trial that it was agreed he should be paid for the work which became unnecessary for his own mining operations.

It appears that there was a written contract, confined to one year, for getting out ore and work connected therewith,

from October 1, 1872, to November, 1873, and that the stripping was done during this time. Gingrass undertook to show—and was so permitted—that he misunderstood this contract, which he was induced to believe was to run longer, and that he would not have done it unless he had so supposed. The superintendent's work he claims to have done under employment of one of the company's agents.

All of the stripping work, which was the chief ground of recovery, was done long enough ago to have been barred by the Statute of Limitations, which was not pleaded for the reason suggested by counsel that it was supposed the issues were the same in fact in this direction as in a case formerly before us which was discontinued. And it was claimed on the trial that Gingrass had estopped himself, by a presentation and settlement of accounts in 1875, from now setting up any such claim as the present.

We think this ground well taken. In 1874 he presented a claim of $4240, which included among other things several charges for removal of dirt, and labor and outlays of various kinds, which was reduced by agreement to $3000, which was credited on account. In the latter part of 1875 a full account of nearly $40,000 was settled between the parties, leaving a balance due Gingrass of $367.57, against which there was a claim of rent as an offset, but no dispute as to the items of the account itself. It appeared from the testimony of Gingrass himself that he had quit his business with the company long before this, and that complaint was made to him not only that he had made charges that were not expected, but also that he had waited longer than he should in presenting it. It further appeared from his own testimony that he did not present the principal claims now in suit at all, and never informed the company that he claimed them before the trial of the suit formerly brought in 1877, and, as we understand him finally to admit, he never did so until this suit was brought in February, 1880.

It appears then from his own testimony that when he was called upon by all the usages of business to make a full showing of his claims against his employers, for the pur-

poses of a complete settlement, he made no such claim as is now set up. It appears further that this was not caused by any understanding with the company that the comparison of accounts should embrace less than all his demands, and that he kept this back—if he had really any such claim in his mind—purposely. His attention had also been called—as he says himself—to the objection of the company to the delay already had, and its surprise at the extent of his demands. Under such circumstances we think he had no right to keep back anything whatever, and that the arrangement and comparison then had must be regarded as a final statement of his claims which it would be a fraud to disturb. See *American National Bank v. Bushey* 45 Mich. 135.

We have not found any admissible ground on any legal theory on which the judgment below could be allowed to stand, but we do not consider it necessary to discuss the other questions presented, because the views already given render it needless.

Judgment must be reversed with costs and a new trial granted.

COOLEY and MARSTON, JJ. concurred.