JOHN A. ROEBLING'S SONS COMPANY (A CORPORATION) v.
THE WINTHROP HEMATITE COMPANY (A CORPORATION).

*Sale—Warranty—Waiver—Account stated.*

A vendee who declines to receive goods contracted for under a specified *warranty* because unable to pay for the same, and, after notifying the vendor that the goods are held subject to his order, appropriates them to the use for which they were purchased, without the vendor's knowledge or consent, who is credited with the agreed purchase price, of which facts he is notified, as also of the time fixed by the vendee for payment, to *all* of which he assents, and accepts an accompanying payment on the account thus rendered, cannot in a suit by the vendor to recover the balance due recoup damages for an alleged breach of the *original* warranty, which he must be held to have waived, and taken the goods at his own risk.

Error to Marquette. ' (Grant, J.)   Argued April 27, 1888.
Decided May 18, 1888.

*Assumpsit.*   Defendant brings error.   Affirmed.   The
facts are stated in the opinion.

*E. E. Osbarn,* for appellant.   [For points, and authorities
cited, see foot-notes to opinion, pages 355, 356.—
REPORTER.]

*Hayden & Young,* for plaintiff, contended:

1. The action of the defendant made the account rendered an account
   stated in fact and in law ; citing *Lockwood v. Thorne,* 11 N. Y.
   174, 18 Id. 290 *; Brown v. Vandyke,* 8 N. J. Eq. 795 ; *Toland v.
   Sprague,* 12 Pet. 300 ; which was a *new* promise, payable as stated
   in defendant's letter ; citing *White v. Campbell,* 25 Mich. 468 ;
   *Albrecht v. Gies,* 33 Id. 389 ; and any attack upon its items
   would be excluded.
2. On the question of defendant's waiver of the original warranty,
   counsel cited *Bank v. Bushey,* 45 Mich. 135 ; *Gingrass v. Iron
   Cliffs Co ,* 48 Id. 413 ; *Comstock v. Sanger,* 51 Id. 502, 503 ;
   *Reid v. Ladue,* 66 Id. 22.
3. The expenses of litigation incurred by plaintiff in reliance upon
   defendant's conduct are sufficient to make good the estoppel ;'
   citing *Meister v. Birney,* 24 Mich. 440; *Heyn v. O'Hagen,* 60 Id.
   156.

LONG, J.   The plaintiff is a manufacturer of iron and steel
rope in New Jersey.   The defendant operates an open-pit
iron mine near Ishpeming, in this State.

In the month of August, 1883, H. L. Shippey, the agent of
the plaintiff, made, while in Ishpeming, a contract with
defendant for the delivery of 2,000 feet of No. 1 Bessemer
steel wire rope, $2\frac{1}{4}$ inches in diameter, which was to be used
by the defendant for conveying power from the pump-house
on the surface to the pumps at the bottom of the mine.   It
was figured that the rope would be subjected to a. working
strain of 18 tons, and Mr. Shippey, with the aid of the tables
printed by the plaintiff as showing the strength of iron rope,
and his representing that steel was 20 to 25 per cent. stronger

than iron, agreed with defendant's secretary and treasurer, E. G. St. Clair, that the $2\frac{1}{4}$ inch rope would be of sufficient strength to perform the duty for which it was intended.

The defendant's mine was operated, so far as the mechanical part was concerned, entirely by the manager, George A. St. Clair. Mr. E. G. St. Clair, the financial man, knew nothing about the practical part of the operation, and took his figures in ordering the rope, and received subsequently whatever information he obtained regarding the rope, or any of the mining matters, only as it was given him by the manager. He had no means of observation, and knew nothing of it himself.

The rope was shipped in October, 1883, and lay, during the winter of 1883–84, in the propeller St. Paul, at the bottom of the Sault canal. It reached the defendant in the spring of 1884, but the defendant then declined to receive the rope, because it could not pay for it, and it lay at the mine an entire year before it was put in use.

The defendant was indebted to other parties at this time, and subsequently gave a chattel mortgage upon its property situate at Ishpeming; but, having declined to receive this rope, it was not included in said chattel mortgage.

During the year the rope was lying at the mine, Mr. Shippey again came to Ishpeming, and visited the mine, and inspected the rope, and examined the place where it was to be used, and the work it was to do, and expressed himself unqualifiedly that the rope was sufficient to do the work.

On July 15, 1884, the defendant, through its treasurer, wrote the plaintiff, saying:

"In answer to your inquiry as to the $2\frac{1}{4}$ inch rope delayed in transit last fall, and which lay at the Sault over winter, the same is now at the mine, and subject to your order.  *  *  *  I take this means of putting it into your hands again, as we shall not be able to pay you for it for some little time to come, as we have got into trouble owing to the condition of the iron market this summer, and have had to give security

to some of our creditors. * * * We have never passed this to the credit of John A. Roebling's Sons Company on our books, and do not regard it as belonging to us. Please advise me what disposition to make of it."

After considerable correspondence during 1884, defendant wrote plaintiff on December 1, 1884, saying:

"If we can make satisfactory arrangements as to payments, I think we can use about 1,000 feet of the large wire rope we have at our mine. We have some dealings with Deer Lake Co., and shall have some of their four-month paper, and, if you are willing that we do so, will take what we can use now, and give you that paper for it. Next year, if all is well, we may be able to use the rest of the rope, and pay you for it."

On December 27, 1884, plaintiff, by H. L. Shippey, its attorney, wrote the defendant, saying:

"In further response to your favor relative to rope for Deer Lake Co., would say that we would not care to cut the large rope in two pieces, but would sell you the whole rope, with Deer Lake Co.'s paper in payment, if not made for too long a time."

After this, and shortly before May 25, 1885, plaintiff was informed that defendant, without permission or knowledge of plaintiff, had appropriated the rope, and put it into use. Upon this, plaintiff, on May 25, 1885, wrote the defendant as follows:

"We find, owing to absence of writer, that your letter of April 29 has not been specifically replied to. We feel that, after we have been kept out of the money so long, we should stand no claim against the rope by loss of fire or water on propeller St. Paul, and we do not particularly like the idea of selling it on so long time as you name in your letter. We should like a larger proportion of cash, and shorter time on the balance. We have been advised, within a day or two, that you had the rope in use. This we do not think an exactly square transaction of taking this rope without notifying us, as we had it in the hands of several parties to sell, as you told the writer it would be three years before you could use it. Please let us know by return mail if such is the case; also what you propose to do about the payment."

To this letter the defendant replied on June 1, 1885, as follows:

"We are in receipt of yours of 25th, and note same. I regret Mr. Shippey's absence and not hearing from you till now have seemingly put us in the wrong in cutting the large rope, and placing it in use as we have. Now, as we either had to get another rope or use this one, and supposing from our correspondence it was all right we put this in use, and of course will pay you for it. We are moving ore now, and shall have funds to use, but not much of them until we begin to get in returns from our June shipments, and can do as I wrote you, viz., pay you one-half cash July, and balance in August. Under the circumstances (while I really think you ought to allow it), we will say no more about the general average claim I wrote about, which will make this a pretty costly piece of rope for us. Awaiting further advice,

"I remain, Yours truly,

"E. G. St. Clair, Treasurer.

"The above will make rather a better settlement for you than if we had included it in our mortgage business a year since."

On May 30, 1885, this rope was credited by defendant's treasurer, Mr. St. Clair, upon defendant's books, to the plaintiff, at the price asked for it by the plaintiff, viz., $1,373.50. This entry, with the previous entry for goods purchased and already credited, amounting to $172.25, constituted a credit to plaintiff on defendant's books on June 1, 1885, of $1,545.75. On August 12 following, defendant remitted to plaintiff on this account, by letter of that date, $500, and entered the payment as such on its books. This was the last entry on the books of the defendant, and the last payment made on the account.

Plaintiff sent the claim upon the balance of this account to its attorneys at Ishpeming for collection. The attorneys held the claim for some months, waiting for defendant to do something towards payment, during which time several talks were had with E. G. St. Clair about its payment. No claim of any defense was made by him during that time.

A few weeks before February 28, 1887, plaintiff's attorney

asked Mr. St. Clair for payment. He admitted the account, and at that time made no complaint of the quality of the rope, or objection to the payment of the balance as it stood, but said:

"We will fix it up for you, if you will wait a few days, so it will be satisfactory."

On February 28, 1887, suit was commenced by declaration, to which defendant demurred, and suit was discontinued. The present action was commenced on April 12, 1887, by declaration on the common counts in *assumpsit*, to which was added a bill of particulars of plaintiff's demand, as follows:

"1883.  Oct. 11.  300 feet of No. 2 Bessemer steel
|  | | | |
|---|---|---|---|
| wire rope, .67 | | | $201.00 |
| 25 per cent. | | | 50.25 |
| | | | $150 75 |
| Oct. 11.  1 closed socket, fastened | $11.50 | | |
| Oct. 11.  1 closed socket, loose | 10.00 | | |
| | | | 21.50 |
| Oct. 17.  2,000 feet of Bessemer steel wire rope, | | | |
| .90 | $1,800 00 | | |
| 25 per cent. | 450 00 | | |
| | | | $1,350.00 |
| 1 closed socket, fastened | $12.50 | | |
| 1 closed socket, loose | 11.50 | | |
| | | | 23.50 |
| | | | $1,545.75 |

"The above being the same account mentioned in and annexed to the affidavit of H. L. Shippey annexed to the declaration herewith accompanying.

"1885.  June 18.  Money found to be due plaintiff from defendant on accounting had between them upon the same account mentioned in the affidavit of H. L. Shippey aforesaid, and above stated, $1,200."

To this bill of particulars was added a monthly statement of the whole account, taken from the ledger of the plaintiff, and in which it is stated:

"Thus enabling you to compare with our own books. Please check balance shown; and, if any error exists, advise us."

To this declaration and bill of particulars was annexed the affidavit of H. L. Shippey, the agent and manager of plaint-

iff, stating that the account is true and correct, and that the defendant is justly indebted to the plaintiff—

" Upon said account in the sum of $1,200.33, no part of which has ever been paid, and which indebtedness is now due, over and above all legal set-offs or counter-claims, and has been due since October 11 and 17, 1883, with interest thereon from such date at the rate of seven per cent. per annum."

This bill of particulars and affidavit annexed was made a part of the declaration, and served upon the defendant as commencement of suit. To the declaration the defendant pleaded the general issue, and the cause was noticed for trial at the ensuing term. After so pleading the general issue, and on May 24, 1887, eight days before the trial of the cause, the defendant, by leave of the court, under an order permitting it to do so, amended its plea, by adding a notice—

" That the defendant will give in evidence in its defense that, if any purchase of the goods set forth in plaintiff's bill of particulars was made by the defendant of the plaintiff, such purchase was made with the agreement on the part of the plaintiff that the goods should be reasonably fit and proper for the use for which they were intended, of which use the plaintiff was informed at the time of such purchase; and in particular as regards the charge, in said bill of particulars, for 2,000 feet of No. 1 Bessemer steel wire rope, the same was manufactured by plaintiff for defendant to be used for transmitting power for pumping, and was warranted by the plaintiff to sustain a working stress of 30 tons, while in truth and in fact said rope, when put to the use for which it was ordered, proved to be of little or no value, and constantly broke under a strain of 6 or 7 tons; and defendant will show this in diminution of the damages claimed by plaintiff in this suit."

The filing of this notice with the plea seems to be the first intimation or hint to the plaintiff that the defendant had or claimed to have any defense to the account.

The cause came on for trial in the circuit court for Marquette county before a jury. The facts above stated are all admitted by the record. On the trial of the cause the plaint-

iff made a *prima facie* case by proving, from the books of the defendant, the credit to the plaintiff of the items before stated.   The defendant then assumed the burden of proof to show that the rope was not what it was represented and warranted to be, and offered testimony tending to show that at the time Mr. Shippey made the contract with Mr. St. Clair for the sale of this rope, in October, 1883, Mr. St. Clair stated to him the depth of the three shafts to be pumped from, the size of the pumps to be used in the shafts, and the weight of the water to be raised, together with a fair allowance for friction to overcome in raising the water, and the strength of the rope needed.   These figures, upon the weight of the water, was something over 34,000 pounds.   It was also stated to Mr. Shippey that defendant was constantly sinking these shafts, and thus raising the water to greater heights, and that a leeway was desired for safety.   From these figures it was estimated by Mr. Shippey that the $2\frac{1}{4}$ inch No. 1 Bessemer steel rope could be subjected to a working strain of 18 tons, and he then represented to Mr. St. Clair that it was 20 to 25 per cent. stronger than iron rope, and would do the work in the places in which they intended to use it.   The places in which the rope was to be used were all pointed out to Mr. Shippey, and he expressed unqualifiedly that it would do the work.

About May 30, 1885, some 700 feet of this $2\frac{1}{4}$ inch steel wire rope was put in use, running from the engine house to the bob, where it connects with the Winthrop mine plunger, running through pulleys, over the tops of posts, the entire distance.   It appears that in July, 1885, this rope broke while under a strain of only $8\frac{1}{2}$ tons' weight.   The rope broke again September 1, 1885, under a strain of $8\frac{1}{2}$ tons', September 30, 1885, under 13 tons', and April, 1836, under 13 tons', strain. At this time one of the pumps was taken off, and the wire rope supplemented for its entire length, 700 feet, at the surface by an iron rod $2\frac{1}{2}$ inches square, when no more breaks occur-

red at the time on the surface; but on the branches running to the pumps under ground they continued to break in the summer of 1886 under 8 tons' weight; April, 1887, under 8 tons', and June 1, 1887, under 8 tons', weight. A professional rope-splicer was employed to attempt to splice the rope at these breaks, but could not do it because the wire strands were so brittle that they could not be bent. There were other breaks than those above enumerated. The only break occurring before the payment of the $500 was in July, 1885.

The reason given by Mr. E. G. St. Clair, treasurer of defendant, for not making complaint as to the condition of the rope, and for not making complaint to the plaintiff of the breakage, is—

"That at the time, judging from our knowledge of doing business of the parties, it would precipitate a suit at once, which we were not in a position or did not wish to fight."

At the close of the trial, the court, in his voluntary charge, instructed the jury:

" It is claimed by the plaintiff that this is an account stated; that is, that the account was rendered by plaintiff to defendant, that the defendant ratified that account,—agreed to it as correct,—and therefore that the account cannot now be opened except for fraud or mistake.

" The defendant admits that whatever defects there were in this rope it knew during the summer of 1885; the first break, as appears from the testimony of Mr. St. Clair, taking place in July, 1885, shortly after they had begun to use it. It is pretty clear to my mind, gentlemen, that this was, therefore, a settlement of this account between the parties; that it was an account stated. The bill was rendered containing all the items, and the total amount. The defendant made no objection to it. It made a payment upon it, and promised to make other payments. I furthermore think that, if there were any defects in this machinery, the defendant had waived it by its conduct. The defendant, clearly, by its conduct, had given the plaintiff to understand that there was no objection to this machinery; the account was not disputed; the amount was agreed upon. And yet the defendant waited nearly two

years before making any objection whatever to this account in any particular.

"I think, gentlemen, that that, if there was any defect, was a waiver on the part of the defendant of any such defect; and I do not think, the account having been agreed upon, being ratified, a payment having been made, while these defects, if any, were known to the defendant, that it can now attack this account stated. An account stated can only be attacked for fraud or mistake. I therefore charge you, gentlemen, that the plaintiff is entitled to the full amount of his bill."

The verdict and judgment passing for the plaintiff, the defendant brings the case here by writ of error. There are 12 errors assigned, but we need notice only those relative to the oral charge of the court.

It is contended, on the part of the defendant, that the case should have been left to the jury to decide whether the defendant had sustained the claim that it made by its pleadings as a question of fact, and that the jury should have decided as to what recovery the plaintiff should be allowed to receive; that the silence of the party receiving the bill is interpreted by the law as being his acquiescence; that it never precludes him from showing the incorrectness of the account,—it simply makes the account as rendered *prima facie* proof, and throws the burden upon the party contesting it.[1]

That in the present case the bill of particulars is upon an open account for goods sold, and also upon an account stated, without informing the defendant which it is expected to rely upon; that there is no evidence that the parties met, settled up, etc.; that the only evidence is the entry of a credit upon defendant's books, and a partial payment of $500 six weeks after, and before the quality of the rope was known;

[1] Citing *Sergeant v. Ewing*, 30 Penn. St. 75, 36 Id. 156; *Killain v. Preston*, 4 Watts & S. 14; *Spangler v. Springer*, 22 Penn. St. 454. *Freeland v. Heron*, 7 Cranch, 147; *Bass v. Bass*, 8 Pick. 187; *Lockwood v. Thorne*, 18 N. Y. 285; *Perkins v. Hart*, 11 Wheat. 256; *Wiggins v. Burkham*, 10 Wall. 129; *Bank v. Bushey*, 45 Mich. 135.

and that tne mere silence of the defendant, after having discovered the defects, would not estop it from making the defense now, and that such silence could not be construed as a waiver of the right to set such defects up as matter of defense.[1]

The defense sought to be made would undoubtedly have been of avail to the defendant had it taken and used the rope at the time of its purchase, or before it declined to receive it, and turned it back to the plaintiff, even though some defects appeared before the time of the $500 payment; and the court would have been in error, under such circumstances, in stating to the jury that "the defendant admits that whatever defects there were in this rope it knew during the summer of 1885;" but, under the circumstances as they are made to appear in this case, we do not think the defendant is prejudiced by such charge.

. It is true, where goods have been purchased upon express warranty, and a note or settlement has been made for them before the purchaser has had an opportunity to examine, test, or know their quality, the purchaser may keep the goods, and have a right of action for damages, or recoup damages in plaintiff's suit for the price. In the present case it may be true that the defendant, at the time of the payment of the $500, had no knowledge, or means of knowledge, of the extent of the defects in the rope; but it is not in a position to raise that question. It does not appear that, at the time it put the rope in use, and made it its own property, in the spring of 1885, it did so in reliance upon an express warranty made in August, 1883.

The admitted facts in the case are that the defendant appropriated the rope to its own use in the spring of 1885, without the knowledge or consent of the plaintiff, and at a time when plaintiff was negotiating a sale of it to other parties, fixed its own time of payment, credited the amount to

---

[1] Citing *Faley v. Bispham*, 10 Penn. St. 320.

plaintiff upon its own books, notified the plaintiff of its action in the premises, and plaintiff acquiesced in the arrangement, and received the $500 in part payment.

Defendant now, upon the trial, and for the first time, seeks to set up defects in the rope, and recoup damages for a breach of a warranty made in August, 1883; claiming to stand in the same position as though it had taken and used the rope under the original purchase, and at the same time admitting that, though the defects appeared during the fall of 1885 and the year of 1886, it made no complaint of the defects, and promised from time to time to pay the amount as claimed, and never making any claim for damages until the same is set up in its plea and notice.

The defendant is not in a position to claim under the original warranty of August, 1883. When it appropriated the rope in the spring of 1885, if it desired a warranty from the plaintiff, it should have made a purchase of the article before making use of it, when it might have had the right to rely upon the original warranty. At the time of its appropriation it had no right to it or interest in it. It was the property of plaintiff, and by the appropriation the defendant must be held to have taken it at its own risk, and must suffer the loss, if any defects existed. In this view of the case, the defendant was not prejudiced by the charge of the court.

The judgment must be affirmed, with costs.

CHAMPLIN and MORSE, JJ., concurred. SHERWOOD, C. J., and CAMPBELL, J., did not sit.